UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12CV01395 AGF |
| | ) | |
| GERALD PETERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The United States brings this action against Defendants Gerald Peters and Darlene Peters ("Defendants"), to recover delinquent income taxes and penalties and to enforce, pursuant to 26 U.S.C. § 7403, its tax liens against their residence.[1] Now before the Court are the United States' motion for summary judgment and Ms. Peters' motion for summary judgment. For the reasons set forth below, the United States' motion for summary judgment will be granted and Ms. Peters' motion for summary judgment will be denied.

## BACKGROUND

### Facts

Unless otherwise noted the facts set forth below are not disputed by the parties.

---

[1] The United States also named J. P. Morgan Chase Bank and St. Louis County (the "Lienholder Defendants") as defendants. Each of these entities also holds a lien on the residential property that is the subject of the suit. The United States and the Lienholder Defendants have stipulated to the relative priorities of their liens and no other issues remain for resolution with respect to the Lienholder Defendants. *See* Doc. No. 81.

Defendants Gerald and Darlene Peters, a married couple, are residents of Saint Louis County, Missouri.[2]  Ms. Peters owns and manages rental properties, sometimes through a business called Darlene Peters, Inc., and sometimes individually.  Mr. Peters has never been an owner of Darlene Peters, Inc., but he assists Ms. Peters in her management of rental properties by performing maintenance duties.

In 1995, Defendants purchased a property at 17659 Ailanthus Drive, Chesterfield, Missouri 63005, (the "Ailanthus Property") where they currently reside.[3]  On June 8, 2001, the Peterses executed a purchase agreement to sell certain real property located in Ballwin, Missouri (the "Henry Property").  There is no indication in the record that Defendants' sale of the Henry Property was motivated by condemnation, threat of condemnation, theft, or seizure.  Having entered into a purchase agreement, Defendants thereafter refused to close the sale.  The prospective buyer sued them for specific performance in the Saint Louis County Circuit Court and prevailed.  The Circuit Court ordered Defendants to close on the sale and in April of 2002, they did so.

Defendants distributed a portion of the proceeds from the sale of the Henry Property as follows:  $200,000 to an acquaintance of Ms. Peters, Mary Openlander; $67,200 to Countrywide Mortgage as payment on a mortgaged property titled in the name of Darlene Peters, Inc.; and $37,899.50 to Shared Credit Union.  Ms. Peters instructed Mary Openlander to hold the $200,000 check and subsequently these funds were

---

[2]    The Peterses have been married continuously since 1968 and both reside in the property at 17659 Ailanthus Drive.

[3]    The legal description of the Ailanthus Property is:  Lot 287 of Wildhorse Village F Record plat, as per plat thereof recorded in Plat Book 300 Page 32 of the St. Louis County Records.

transferred to Darlene Peters, Inc.  It is undisputed that Defendants did not reinvest the proceeds from the sale of the Henry Property in replacement property "similar or related in service or use." *Id.*

On October 15, 2003, after unsuccessfully appealing the Circuit Court's decision, Defendants filed their joint Form 1040, their federal income tax return for the 2002 tax year.  They did not report the gain realized on the sale of the Henry Property, asserting pursuant to 26 U.S.C. § 1033, that the gain was not taxable because the conveyance of the property was an involuntary conversion.  *See* 26 U.S.C. § 1033.  The Peterses reported a total tax due of $59.00 on their 2002 tax return.  The Internal Revenue Service ("IRS") audited Defendants' 2002 income tax return and concluded that the involuntary conversion principles set forth in 26 U.S.C. § 1033 did not apply to the sale of the Henry Property because Defendants voluntarily chose to sell the property and never obtained a replacement property, as required by that statute.  *See* 26 U.S.C. § 1033.

On February 3, 2005, following its audit of the 2002 return, the IRS issued a Notice of Deficiency to Defendants in accordance with 26 U.S.C. §§ 6212 & 6213, finding that Defendants had not properly reported the gain realized from the sale of the Henry Property.  The IRS also made additional adjustments to the 2002 tax return, determining that Defendants' tax liability was $155,833, and that Defendants owed a deficiency in the amount of $155,774.  In addition, because Defendants had understated their total income for the 2002 tax year by more than ten percent, the IRS assessed a mandatory penalty pursuant to 26 U.S.C. § 6662(a).  On July 11, 2005, the IRS sent Defendants a Notice of Deficiency reflecting these assessments and demanded payment.

On December 30, 2005, the IRS filed a Notice of Federal Tax Lien against Defendants in St. Louis County, Missouri.

On February 9, 2006, Mr. Peters applied for innocent spouse relief pursuant to 26 U.S.C. § 6015, and on November 22, 2006, the IRS denied this request. Although he was entitled to do so, Mr. Peters did not appeal the IRS' refusal to grant him innocent spouse relief to the Tax Court.

Although the IRS refused to grant innocent spouse relief, on November 26, 2006, an employee in the IRS Appeals Account and Processing Support group incorrectly entered a code in the IRS computer system indicating that the IRS had in fact granted that relief. As a result of the coding error, Mr. Peters' tax liability account showed a zero balance for the 2002 tax year. On October 7, 2007, the IRS corrected the coding error and Mr. Peters' account once again reflected a balance owed for the 2002 tax year.

On May 23, 2011, the IRS erroneously filed a Certificate of Release of Federal Tax Lien with respect to Ms. Peters' tax liability. On July 7, 2011, the IRS revoked its release of the lien and refiled its Notice of Federal Tax Lien against Ms. Peters.

Apart from Mr. Peters' request for innocent spouse relief, Defendants did not contest the Notice of Deficiency. The IRS sent Defendants additional statutory notices and demands for payment in 2006, 2007, 2008, 2009, 2010, and 2011. It is undisputed that Defendants have not paid the additional tax and penalties assessed and remain indebted to the United States for the assessments as well as applicable penalties and

interest.[4]  The United States now seeks to enforce its tax liens with respect to the unpaid assessments, penalties and interest through the sale of the Ailanthus Property.

**Procedural History**

The United States filed this action on August 6, 2012.  After the United States amended its complaint, Defendants answered and the parties made their initial disclosures.  In his answer to the First Amended Complaint, Mr. Peters admitted that he owes the assessed federal tax liabilities for tax year 2002.  *See* Doc. No. 7, ¶¶ 1-8; *see also* Doc. No. 4, ¶¶ 1-8.  In her answer Ms. Peters also admitted that she was liable for the delinquent tax, but raised the affirmative defense that the amount of tax assessed was "in error."  *See* Doc. No. 9, ¶¶ 8 & 17.

In accordance with the Case Management Order ("CMO") and the Federal Rules of Civil Procedure, the United States propounded discovery requests and deposed witnesses.  In her responses to the United States' First Request for Admission, Ms. Peters responded to the inquiries regarding the validity of the July 11, 2005 assessment and her outstanding tax liability for the 2002 tax year as "non-applicable" and reserved the right to supplement her responses.  Doc. No. 61-5.  Ms. Peters did not, however, supplement her responses.  In responding to the United States' Second Request for Admission, Mr. Peters admitted that the sale of the Henry Property was not due to threat of condemnation.  Doc. No. 61-6.  Ms. Peters failed to respond to all inquiries in the Second Request for Admission related to the sale of the Henry Property.  Doc. No. 61-7.  During

---

[4]  As of December 31, 2013, Gerald Peters and Darlene Peters owed $323,723.70 in back taxes, penalties and interest.

her deposition, Ms. Peters testified that she had no documentation to support her assertion that the transfer of the Henry Property was due to an involuntary condemnation. Doc. No. 61-18, at 25, ll.19-22.

At the outset of the suit, Defendants were each represented by counsel, but on September 6, 2013, the Court granted the motion of Ms. Peters' counsel to withdraw. Ms. Peters has not obtained substitute counsel.[5] Mr. Peters continued to be represented by counsel until May 12, 2014, after briefing on these motions was complete.

Following the November 4, 2013 deadline for the completion of discovery in this matter, the Court granted a consent motion to extend the deadline for the filing of dispositive motions through January 31, 2014 and the trial date was continued to June 9, 2014. The United States filed its motion for summary judgment, and pursuant to the extension, Defendants' responses were due not later than February 21, 2014. Defendants filed timely responses to the summary judgment motion on February 10 and February 13, 2014 (Doc. Nos. 63 & 64), and the United States filed its reply on February 19, 2014. Ms. Peters thereafter filed an untimely response to the motion on February 28, 2014. (Doc. No. 68.) Inasmuch as the United States did not move to strike that filing and it is not the subject of dispute between the parties, the Court will consider that document as part of the record. Subsequently, on March 5 and March 11, 2014, after the deadline for the filing of responses to the summary judgment motion had passed, Ms. Peters filed, in

---

[5]    At Ms. Peters' request, the Court appointed counsel for the limited purpose of assisting her in the alternative dispute resolution process. See Local Rule 16.602 (C).

opposition to the motion for summary judgment, her own affidavit[6]; a second affidavit; a copy of an unsigned letter on the letterhead of David Disbrow, Enrolled Agent, dated March 7, 2014; and an unfiled, unsigned 2002 federal income tax return purportedly prepared by an accountant, David Disbrow, and bearing the handwritten notation: "FOR DISCUSSION PURPOSES ONLY." Doc. Nos. 70 & 73. In her second affidavit, Ms. Peters asserted that the tax form and letter demonstrated that Defendants' tax liability for the 2002 tax year had been calculated incorrectly. Prior to these filings, Defendants had revealed neither the existence nor contents of the documents nor identified Disbrow as a possible fact or expert witness. The United States moved to strike the affidavit, the tax form and the letter.

While the motions to strike were pending, the Court conducted a hearing on the motion of Mr. Peters' counsel to withdraw from the case. At the hearing Mr. Peters made a pro se request that the Court, in ruling on the motion for summary judgment, consider the tax return and letter previously filed by Ms. Peters or permit the parties to conduct further discovery in light of what he characterized as this "new evidence." After granting counsel's motion to withdraw, the Court permitted Mr. Peters to seek substitute counsel and to file a brief in support of his request to consider Ms. Peters' filings. The Court explicitly directed him to "explain why the information should be considered new information, why he was unable to present it to the Court before this time, and why the Court should grant him relief with respect to the presentation of this information,

---

[6]     Ms. Peters' first affidavit appears to deal with the mediation and settlement discussions, which matters are not pertinent to the motion for summary judgment, and would not be admissible.

including but not limited to permission to reopen discovery and/or the briefing period for the United States' pending motion." Doc. No. 83, at 2.

The Court granted the United States' motions to strike the belated affidavit and documents submitted by Ms. Peters in opposition to the motion for summary judgment and denied the request by Mr. Peters to reopen discovery or permit further briefing on the motion for summary judgment to include evidence similar to that offered by Ms. Peters in the affidavit and document.[7] *See* Doc. Nos. 71, 74, & 88. Therefore, the affidavit, the tax form, and the letter Ms. Peters filed will not be considered as part of the record for purposes of this motion. *See* Doc. Nos. 70 & 73.

### **Arguments of the Parties**

The United States moves for summary judgment asserting that the record establishes all elements necessary to demonstrate Defendants' liability for the July 11, 2005 assessments and to obtain enforcement of its lien on the Ailanthus Property. Specifically, the United States asserts that Defendants have not raised a genuine issue of material fact with respect to either of these claims because Defendants are bound by their contrary or default admissions in the pleadings and discovery materials. In addition, the United States asserts that the record demonstrates that its calculation of the taxes and penalties owed is correct, and that even if it were not, Defendants are estopped by their

---

[7]     After the Court issued its ruling on the motions to strike, Ms. Peters filed an additional response to the United States' motions. *See* Doc. No. 89. Upon review of that filing, the Court finds that it does not raise new or different issues from those previously presented by Ms. Peters and does not alter the Court's prior decision to grant the motions to strike.

own admissions from challenging the amount of the assessments. Finally, the United States asserts that on the present record Defendants have failed to offer any factual support for their contention that they are not liable for the assessments or that they were calculated improperly. In addition, the United States asserts that Defendants have offered no factual support to demonstrate that they are not liable for the unpaid assessments and penalties or that the IRS' computation of the tax liabilities is incorrect. Accordingly, they contend that the entry of summary judgment in their favor is appropriate here.

Defendants each contest the amount of tax liability as computed by the United States. Ms. Peters simply asserts that the amounts assessed against her are "in error." Mr. Peters asserts that Defendants have paid approximately $30,000 toward their 2002 tax liability and that "[h]ad the IRS audit reflected the correct amount of tax due, and not assessed the 31k penalty which didn't apply to our fact scenario, tax year 2002 would more than likely have been totally paid by now." Doc. No. 85, at 5. Defendants' only purported factual support for their contention was found in the tax form, documents, affidavits and supplemental filings which the Court has stricken from the record as untimely, hearsay, and contrary to the Defendants' prior admissions.

Defendants also argue that their profit from the sale of the Henry Property should be exempt from tax under 26 U.S.C. § 1033. They further assert that before the United States can enforce its liens with respect to their residence, it must, but has failed to show that Defendants' other assets are insufficient to satisfy their tax liability. Mr. Peters also contends that he should not be held liable for the tax liability resulting from the Henry Property transaction because it was his wife who was primarily involved in the sale.

Finally, Defendants raise purported equitable defenses asserting that their age, employment status, health and financial situation should protect them from the loss of their residence.

Ms. Peters raises the same arguments in her motion for summary judgment that she raised in response to the United States' motion for summary judgment.

## APPLICABLE LAW

### I. <u>Standard of Review</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation omitted). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Briscoe v. Cnty of St. Louis, Mo.*, 690 F.3d 1004, 1011(8th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "'Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 n.3 (8th Cir. 2007) (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).

"To establish a genuine factual issue, a party may not merely point to unsupported self-serving allegations." *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013) (internal quotation omitted). The nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012).

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* The non-moving party "must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor." *Id.* at 792 (internal quotation and citation omitted).

Rule 56(c)(4) requires that supporting and opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4). A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). And when such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. *Gannon*, 684 F.3d at 793 (citing the advisory committee's note to Rule 56). In other words, the standard for the admission of evidence for consideration at the summary judgment stage "is not whether the evidence would be admissible at trial—it is whether it could be presented at trial in an admissible form." *See id.*; *see also* Rule 56(c)(2).

Courts may grant summary judgment on the basis of explicit or default admissions whether in pleadings or discovery responses. *See Karras v. Karras*, 16 F.3d 245, 247

(8th Cir. 1994) (affirming grant of summary judgment based on default admissions as a result of failure to respond); *Missouri Hous. Devel. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990) (stating that even if post pleading evidence conflicts with evidence in pleadings, admissions in pleadings are binding on parties and may support summary judgment against party making such admissions); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("[a]ffidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions"). And this principle is equally applicable in tax cases. *See In re Carney*, 258 F.3d 415, 422 (5th Cir. 2001) (affirming bankruptcy court's grant of summary judgment to the IRS based on failure of taxpayer attorney, proceeding *pro se*, to respond to a Rule 36 request for admission regarding IRS proof of claim); *see also Stubbs v. Comm'r*, 797 F. 2d 936, 938 (11th Cir. 1986) (affirming the tax court's grant of summary judgment to the IRS on the basis of facts deemed admitted due to taxpayer's failure to respond to requests for admission).

When a matter is admitted in a pleading or discovery response or by virtue of failure to respond, it is "conclusively established" for purposes of the action, "unless the court, on motion, permits the admission to be withdrawn or amended." *Quasius v. Schwan Food Co.*, 596 F.3d 947, 950 (8th Cir. 2010) (citing Fed. R. Civ. P. 36(b)); *Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) (noting that "[a]lthough the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible"). If facts that are admitted under Rule 36 are "dispositive" of

the case, then it is proper for the district court to grant summary judgment. *Quasius*, 596 F.3d at 950-51; *see also Pleasant Hill Bank v. United States*, 60 F.R.D. 1, 2 (W.D. Mo. 1973) (listing illustrative cases).

## II. Federal Tax Law

### A. Assessments

A tax assessment is made by recording the liability of the taxpayer in the office of the Secretary of the IRS. *See* 26 U.S.C. § 6203; *United States v. Galleti*, 541 U.S. 114,119 (2004). For purposes of a motion for summary judgment, courts hold that notices and certificates of assessment are sufficient, self-authenticating evidence that a tax assessment was made in accordance with the statutory and regulatory requirements. *See United States v. Bisbee*, 245 F.3d 1001, 1006 (8th Cir. 2001); *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993); *United States v. Neal*, 255 F.R.D. 638, 643 (W.D. Ark. 2008).

In addition, IRS tax assessments are presumed correct and the taxpayer bears the burden of proving, by a preponderance of the evidence, that an assessment is erroneous or that the IRS' computation is incorrect. *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *N.D. State Univ. v. United States,* 255 F.3d 599, 603 (8th Cir. 2001); *Neal*, 255 F.R.D. at 643; *see also Bisbee*, 245 F. 3d at 1006-1007.

### B. 26 U.S.C.§ 1033

Section 1033 of the Internal Revenue Code allows for the non-recognition of gain from the proceeds of a property that is "involuntarily converted." 26 U.S.C.§ 1033. A taxpayer seeking to defer gain on real property based on involuntary conversion must

meet the specific requirements of § 1033.  *Comm'r v. GlenshawGlass Co.*, 348 U.S. 426,

430 (1955) (stating that it is the "intention of Congress to tax all gains except those

specifically exempted").  In order to qualify for the non-recognition of gain, a taxpayer

must reinvest the proceeds from the involuntary conversion in a replacement property

that is "similar or related in service," within two years of the "close of the taxable year in

which any part of the gain upon the conversion was realized."  *See* 26 U.S.C. §

1033(a)(2)(B)(I).

The exemption applies only if the property is "compulsorily or involuntarily

converted."  Treas. Reg. § 1.1033(a)-1(a).  And a conversion is termed "involuntary"

only if it is the result of "destruction of property in whole or in part, the theft of property,

the seizure of property, the requisition or condemnation of property, or the threat or

imminence of requisition or condemnation of property."  *Id.*; *see also Loco Realty Co., v.

Comm'r*, 306 F.2d 207, 208 (8th Cir. 1962) (evaluating involuntary conversion claim

where taxpayer's building in St. Louis was condemned).  Section 1033 will apply where

the taxpayer loses possession of property due to a situation out of his control, but not

where a taxpayer voluntarily, albeit reluctantly, chooses to divest himself of a property.

*See, e.g., Marshall v. Comm'r*, 56 T.C.M. 1989-5 (CCH) 1006, 1989 WL 148 (Tax Ct.

1989) (finding that a property was not compulsorily converted for purposes of § 1033

where petitioners chose to take a lump sum buyout from a health insurance plan in

exchange for surrendering all rights to health care benefits after a certain date).

C.  The Penalty Under 26 U.S.C. § 6662(a)

Under 26 U.S.C. § 6662(a), the IRS is required to assess a penalty whenever a taxpayer understates the tax owed by "the greater of – (i) 10% of the tax required to be shown on the return for the taxable year, or (ii) $5,000." 26 U.S.C. § 6662 (d)(2)(A); *see also Woodsum v. Comm'r*, 136 T.C. 585, 592 (2011) (noting that the statute's use of the phrase "shall be added" indicates that assessment of the penalty is mandatory).

The United States bears the burden to demonstrate that a § 6662 penalty should be assessed. *See* 26 U.S.C. § 7491(c). The United States satisfies its burden of production with respect to a § 6662(a) penalty by showing that an understatement occurred and by "simply pointing out the amount of the underpayment." *Barrett v. United States*, 561 F.3d 1140, 1147 n.7 (10th Cir. 2009); *see also* 26 U.S.C. § 7491(c). Once the United States satisfies its burden, the taxpayer must come forward with persuasive evidence that the United States' determination is incorrect. *Higbee v. Comm'r*, 116 T.C. 438, 446-447 (2001).

D.  Enforcement of Federal Tax Liens

Pursuant to 26 U.S.C. § 6321, when any person who is liable for federal income tax fails to pay that tax after assessment, notice and demand, the amount of the unpaid tax, penalty and interest "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; *see also United States v. First Nat'l Bank &Trust Co. of Fargo, N.D.*, 386 F.2d 646, 647 (8th Cir. 1967). "Assessment liens" arise on the date that the assessment issues and the United States is required to file a notice of federal tax lien to protect the priority

of its interest in the subject property over that of third parties.  *See* 26 U.S.C. §§ 6321-

6323; *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir. 1989).

      The IRS may extinguish a federal tax lien by issuing a certificate of release but if

the IRS revokes the certificate of release, the lien is reinstated with the same force and

scope as the erroneously released lien.  *See* 26 U.S.C. § 6325(f)(2)(B); *United States v.*

*Rogers*, 558 F.Supp. 2d 774,789-90 (N.D. Ohio 2008); *Boyer v. Comm'r,* T.C. Memo.

2003-322, 2003 WL 22725293, at *4 (Tax Ct. 2003) (noting that "[section] 6325(f)(2)(B)

allows the IRS to reinstate a lien" and "belies [the taxpayer's] argument that the

erroneously issued certificate in this case extinguished his liability once and for all").

With respect to third parties, a certificate of release may cause the United States to lose

its priority over another lienholder who files a notice of lien prior to revocation of the

release, but it does not affect a taxpayer's personal tax liability.  *See* Treas. Reg. §

301.6325-(f)(2)(iii)(b).

      The United States may enforce its interest in an IRS administrative levy under 26

U.S.C. § 6331 or as in this case, seek judicial enforcement of the federal tax lien pursuant

to 26 U.S.C. § 7403.  Different protections apply in each type of proceeding, and the

Court's authority with respect to the enforcement of a tax lien is greater than that granted

the IRS under it authority to levy.  *See* Treas. Reg. § 6321; *see also American Trust v.*

*American Community Mut. Ins*. Co., 142 F.3d 920, 923-24 (6th Cir. 1998).  For example,

in the administrative proceeding, before the IRS can levy on a principal residence, it must

first obtain approval in a district court.  26 U.S.C. § 6334(e)(1)(A).  However, in a

judicial enforcement action such as this one the taxpayer is afforded an opportunity to

contest his tax liability before a court orders a sale of the property, but the governing statute, 26 U.S.C. § 7403, does not provide that a court should consider whether (1) the subject property is the taxpayer's principal residence; or (2) the taxpayer has other assets that could be used to satisfy his delinquent tax debt. *Compare* 26 U.S.C. § 7403 *with* 26 U.S.C. § 6334(e) (affording taxpayers certain protections against IRS levies on a taxpayer's "principal residence" and on certain business assets); *see also American Trust*, 142 F.3d at 923-24. In addition, a taxpayer cannot defeat a lien enforcement action brought pursuant to 26 U.S.C. § 7403 simply by contending that the United States can satisfy the tax obligations by some other means. *See United States v. Bierbrauer*, 936 F.2d 373, 376-77 (8th Cir.1991) (noting that taxpayer may seek a petition to stay judgment following enforcement of the lien).

Pursuant to 26 U.S.C. § 7403, courts have only limited discretion to deny foreclosure of a federal tax lien on a taxpayer's property. *See United States v. Rodgers*, 461 U.S. 677, 709 (explaining that Congress's use of the word "may" in § 7403 affords a district court a limited degree of equitable discretion in ordering the enforcement of federal tax liens). However, the relevant equitable considerations are the interests of non-liable third parties, rather than the interests of the taxpayer. *See id.* at 709-711 (holding that "[w]e can think of virtually no circumstances [under § 7403], for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself"); *see also Bierbrauer*, 936 F.2d at 376.

# DISCUSSION

## I. The Validity of the Assessments

Because Defendants failed to pay their tax liabilities after notice and demand, a federal tax lien arose on July 11, 2005, and attached to all property and rights to property owned and thereafter acquired by Defendants, including the Ailanthus Property.  Mr. Peters' judicial admission in the answer to the complaint established that he is indebted to the United States for the taxes and penalties that the IRS assessed for the 2002 tax year, as well as all accruals from the dates of the assessments.  *See United States v. Neal*, 255 F.R.D. 638, 643 (W.D. Ark. 2008); *Scott v. Comm'r*, 117 F.2d 36, 40 (8th Cir. 1941); *see also Nat'l SuretyCorp. v. Ranger Ins. Co.*, 260 F.3d 881, 886 (8th Cir. 2001) (noting that "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told the court by the most formal and considered means possible.")  He cannot now contest the validity of the assessments.  *Id*.

Ms. Peters also admitted that she was liable for the taxes, but raised the affirmative defense that the taxes were assessed against her in error.  (Doc. No. 9,¶¶ 8 & 17.) However, Ms. Peters admitted by default the matters set forth in the United States' First and Second Requests for Admission.  *Quasius*, 596 F.3d at 950.  She cannot contest the validity of the assessments here because her default admissions, and her admissions related to the disposition of the Henry Property contradict her unsupported assertions that the IRS' computation of her tax liability is incorrect.  *Id*. at 951.

The only support Defendants offer for their contrary assertions that the tax liability was incorrectly calculated are the unsigned letter and tax return of David Disbrow.  But,

as stated above, Mr. Disbrow has never been identified as a witness, has provided no signed expert report, and Defendants failed to offer any persuasive justification for having failed to comply with the deadlines in the Case Management Order and the Court's rules. If Defendants believed an expert could demonstrate the errors in the IRS assessment, they had more than seven years to do so. Instead, Ms. Peters thwarted the efforts of the United States to obtain any discovery or information related to her affirmative defense, offering this inadmissible "evidence" only after the summary judgment briefing was complete, and on the eve of trial. For these reasons, and the further reason that Mr. Peters is bound by the admissions in his answer, the Court struck these filings, and sees no basis to reconsider that ruling. Although Ms. Peters has been proceeding pro se throughout much of these proceedings, she is still bound to follow the court rules, and cannot ignore her discovery and compliance obligations to Plaintiff's prejudice.

### A. 26 U.S.C. §1033

Defendants have not met and cannot meet their burden to show that the sale of the Henry Property was not a taxable gain under § 1033. The record establishes that the Peterses could not properly defer gain on the sale of the Henry Property because they voluntarily sold the property; and did not use the proceeds to purchase a replacement property.

Here, Defendants chose to enter into a contract to sell the property, but later refused to close the sale. When the Circuit Court ordered Defendants to close on the deal, it simply required them to perform their contractual duty. Section 1033 does not

permit the deferral of tax on a gain resulting from court-ordered specific performance of a contract to sell property. Although Defendants may have been reluctant to complete the sale, they voluntarily undertook the sale of the property and were obligated under the terms of their sales agreement to complete the sale. There is simply no indication in the record that the sale was involuntary or that the property was destroyed, stolen, seized, requisitioned or condemned.

Moreover, even if the sale of the Henry Property were deemed a compulsory or involuntary conversion, the Peterses still would not qualify for non-recognition of gain because they never obtained replacement property. Section 1033 specifies that a taxpayer must reinvest the proceeds of an involuntary conversion in replacement property that is "similar or related in service," within 2 years of the "close of the taxable year in which any part of the gain upon the conversion was realized," or, in this case, December 31, 2004, in order to qualify for the non-recognition of gain. *See* 26 U.S.C. § 1033(a)(2)(B)(I).

Defendants offer no evidence that they invested the proceeds of the sale in a replacement property in accordance with § 1033, and the record indicates instead that they distributed a portion of the funds by check to various payees, including $200,000 to an acquaintance of Ms. Peters that was eventually transferred to a business owned by Ms. Peters.

Finally, Mr. Peters' assertion that he had little involvement in the Henry Property transaction is to no avail. Mr. Peters' innocent spouse claim was previously denied, he failed to appeal that decision and this Court has no authority to address the issue. *See* 26

U.S.C. § 6015(f) (providing that a petition for innocent spouse relief must be pursued "under procedures prescribed by the Secretary," and only the United States Tax Court has jurisdiction over an appeal of the Secretary's decision); *United States v. Elman*, No. 10 CV 6369, 2012 WL 6055782 at *3-4 (N.D. Ill. Dec. 6, 2012) (noting that the Tax Court has exclusive jurisdiction to adjudicate an innocent spouse claim). The IRS has found that he is jointly liable for the tax on the gain from the sale and he offers no factual or legal support for his contention to the contrary.

B. 26 U.S.C. § 6662(a)

The United States has established by way of a sworn declaration and accompanying documentation that after the IRS examination, Defendants' total tax liability for 2002 was determined to be $155,833.00, rather than the $59.00 amount they had reported. *See* Doc. Nos. 61-3, 61-9, 61-11, & 61-16. This difference represents and understatement of more than 10% percent of the tax required to be shown on the return. Therefore, the United States has met its burden to demonstrate that the § 6662(a) penalty should be applied here. *Barrett*, 561 F.3d at 1147 n.7.

C. Additional Penalties and Interest

In addition to the assessment of tax on the gain from the sale of the Henry Property and the penalty under 26 U.S.C. § 6662(a), the IRS also assessed a penalty pursuant to 26 U.S.C. § 6651, and interest on all amounts owed.

Section 6651(a)(3) requires a taxpayer to pay a penalty if he fails to pay the amount required to be shown on a return. Defendants each admit they have not paid the amounts assessed and therefore, there is no genuine issue of material fact with regard to

the imposition of the penalty under 26 U.S.C. § 6651.  In addition, 26 U.S.C. § Section

6601 requires a taxpayer to pay interest on unpaid tax and additions to tax.

## II. <u>Enforcement of the Federal Tax Liens on the Ailanthus Property</u>

The IRS notified Defendants of their tax liabilities and made demand for payment,

but they did not pay those amounts and the federal tax lien first arose on July 11, 2005

and attached to their currently owned and after-acquired property, including the Ailanthus

Property.   After the IRS filed its notice of federal tax lien on December 30, 2005, the

IRS erroneously issued a certificate of release of federal tax lien with respect to Ms.

Peters, but the revocation of the certificate of release reinstated the lien.  *See* 26 U.S.C. §

6325(f)(2)(B); Treas. Reg. § 301.6325-(f)(2)(iii)(b); *see also Rogers*, 558 F. Supp. 2d at

790.  Because the IRS did not issue a certificate of release of federal tax lien as to Mr.

Peters, the United States' interest in the property was never affected.  *See* 26 U.S.C. §

6325(f)(2)(B).[8]

The United States has demonstrated the validity and priority of its tax liens with

respect to the Ailanthus Property.  Defendants are unable as a matter of law to

demonstrate that the objections they raise should bar the enforcement of the United

States' liens.  26 U.S.C. § 7403; *see also United States v. Nat'l Bank of Commerce*, 472

U.S. 713, 720 (1985).

With respect to the arguments raised by Defendants, in a lien enforcement action

such as this one the United States is not required to show that a taxpayer's other assets

---

[8]    The coding error which resulted in an incorrect zero balance entry with respect to Mr.
Peters' tax liability from November 26, 2006 through October 7, 2007, had no legal
effect on the tax liability or the lien.

are insufficient to permit collection of the tax liability.  26 U.S.C. § 7403.  The

requirement found in 26 U.S.C. § 6334(e) that an official may not approve certain IRS

levies unless that official "determines that the taxpayer's other assets subject to collection

are insufficient to pay the amount due . . ." is not applicable here.  26 U.S.C. § 6334(e).

In addition, Defendants cannot avoid foreclosure simply because the Ailanthus Property

is their personal residence and the United States is not required to show that there are no

alternative methods of collecting the amounts due.  Finally, the Court declines to exercise

its limited discretion to bar enforcement of the tax lien on equitable grounds.  The

equities cited here relate to Defendants and not to innocent third parties.  Therefore, to

bar enforcement of the lien on equitable grounds would be improper.  *See Rodgers*, 461

U.S. at 709-711; *Bierbrauer*, 936 F.2d at 376.

### CONCLUSION

For the reasons set forth above, the Court will enter judgment on Counts I and II

of the First Amended Complaint in favor of the United States and against Gerald Peters

and Darlene Peters and deny Ms. Peters' motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' motion for summary

judgment is **GRANTED**.  (Doc. No. 59.)

**IT IS FURTHER ORDERED** that Defendant Darlene Peters' motion for

summary judgment is **DENIED**.  (Doc. No. 66.)

**IT IS FURTHER ORDERED** that on or before **June 20, 2014**, the United States

shall file for entry by the Court a proposed Order of Sale enforcing the judgment in this

matter against the Ailanthus Property.

A separate judgment shall accompany this Memorandum and Order.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2014.